UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-22763-CV-MIDDLEBROOKS
(CRIMINAL CASE NO. 07-20155-CR)
MAGISTRATE JUDGE REID

PAULINO GRANDA,

    Movant,
v.

UNITED STATES OF AMERICA,

    Respondent.
_____/

## REPORT OF MAGISTRATE JUDGE REID

This cause is before the Court upon Movant Paulino Granda's Motion to Vacate pursuant to § 28 U.S.C. 2255 (the "Motion"). [ECF No. 24]. Granda seeks to vacate his convictions and/or sentences as to Counts 6 and 7 under 18 U.S.C. §§ 924(o) and 924(c), because Conspiracy to Commit Hobbs Act robbery is no longer a valid predicate for §§ 924(o) and 924(c) convictions. *See United States v. Davis*, 139 S. Ct. 2319 (2019). For the reasons set forth below, this Court recommends that Movant's Motion be **DENIED**.

    I.    Background

In this reverse sting case, which took place in 2007, Paulino Granda, ("Granda") planned with a confidential informant ("CI"), an undercover detective, and multiple co-conspirators to rob a tractor-trailer carrying sixty to eighty kilograms of cocaine at gunpoint. Specifically, Granda met with the CI, whom he knew from their time in jail together, and told the CI that he was putting together a criminal crew and looking for work. The CI then introduced Granda to the undercover detective. The detective claimed to be a disgruntled drug trafficker who wanted to steal cocaine

1

from his Colombian boss. The undercover detective informed Granda that he knew when and where his boss would be delivering a tractor-trailer carrying sixty to eighty kilograms of cocaine. Granda expressed interest in the scheme and explained how his crew would dress as a SWAT team, rob the truck at gunpoint, kidnap the truck drivers, steal the truck, and later divide the drugs. Granda stressed the importance of his crew securing the perimeter and providing surveillance. Granda also told the undercover detective that, while Granda's crew would not plan to shoot anyone, the crew would not hesitate to kill one of the drivers if necessary. Granda's brothers, Carlos and Fidel, served as Granda's lookouts, and Granda instructed Carlos to bring a gun to the robbery.

Granda and the various co-conspirators then met in the kitchen of Granda's parents' apartment to prepare for the robbery and finalize their plan. The co-conspirators gathered guns and zip ties to use as handcuffs. Later that evening, the co-conspirators met at a gas station where they waited until the CI informed them of the tractor trailer's location. The CI then drove Granda and a co-conspirator to the warehouse where the truck was parked. The rest of the co-conspirators followed close-by. Once all the co-conspirators arrived, the lookouts took their individual stations and the "robbers" convened in one vehicle. As the vehicle drove up to the tractor-trailer and one of the co-conspirators approached the driver's side of the truck with his gun drawn, the police identified themselves. One of the co-conspirators then raised his gun, initiating a shootout. During the exchange of gunfire, two co-conspirators were killed and two others, including Granda, were injured. Carlos Granda, who was serving as a lookout, attempted to flee the scene but crashed when trying to avoid a police blockade. After the shootout, the police recovered a semiautomatic pistol from the vehicle Granda was in. The police found only handcuffs in Carlos' car.

II.     Procedural History

On April 20, 2007, a federal jury in the Southern District of Florida returned a superseding indictment charging Granda with the following offenses:

1. Conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (Count 1);

2. Attempted possession with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (Count 2);

3. Conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. §§1951 and 2 (Count 3);

4. Attempt to commit Hobbs Act robbery in violation of 18 U.S.C. §§1951 and 2 (Count 4);

5. Attempted carjacking in violation of 18 U.S.C. §§ 2119 and 2 (Count 5);

6. Conspiracy to use, carry, and possess a firearm during, in relation to, and in furtherance of a crime of violence and drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) and (o) (Count 6);

7. Using, carrying, and possessing a firearm during and in relation to a crime of violence and drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2 (Count 7); and

8. Possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 2 (Count 8).

[Case No. 1:07-cr-20155, ECF No. 61][1].

Critical to the outcome this case, the indictment listed each of the offenses charged in Counts 1, 2, 3, 4, and 5 as predicate crimes-of-violence or drug-trafficking offenses for the § 924(o) and § 924(c) offenses charged in Counts 6 and 7. *Id*. The grand jury did not specify which predicate

---

[1] Hereinafter cited as "[CR ECF No.]"

offense it relied upon for the charges in Counts 6 and 7, and the court did not instruct it to do so. *Id*.

At trial, Granda's counsel argued both that he was entrapped and that he believed he was cooperating with the government, but that the CI double-crossed him. Similarly, part of Carlos Granda's defense was that he believed Granda was working as a CI. "Plainly unconvinced," the jury returned a unanimous general verdict convicting Granda on all counts. The court sentenced Granda to a total of life plus 84 months of imprisonment, consisting of concurrent prison terms of life imprisonment as to Counts 1 and 2, 240 months as to Counts 3, 4, and 6, 180 months as to Count 5, and 120 months as to Count 8. [CR ECF No. 259]. The sentence also included an 84-month sentence as to Count 7, to be served consecutively. *Id*.

On September 14, 2007, Granda appealed. [CR ECF No. 260]. His appeal was dismissed for want of prosecution after he failed to timely file a corrected brief. [CR ECF No. 299]. On March 10, 2010, Granda filed a motion for a new trial, [CR ECF No. 301], which was subsequently denied. [CR ECF No. 312]. Next, on April 6, 2015, Granda filed a motion to vacate pursuant to 28 U.S.C. §2255, [CR ECF No. 355], which was dismissed as time-barred. [CR ECF No. 358]. Finally, on June 30, 2016, Granda filed a motion to correct sentence pursuant to 28 U.S.C. §2255, [Case No. 16-cv-22825, ECF No. 1][2], which was unsuccessful. [CR ECF No. 367].

On July 2, 2020, the Eleventh Circuit granted Granda's application for authorization to file a second or successive §2255 motion to challenge his § 924(o) and § 924(c) convictions. [CR ECF No. 386]. Granda argued that his § 924(c) and § 924(o) convictions and sentences in Counts 6 and 7 were unlawful in light of *United States v. Davis*, 139 S. Ct. 2319 (2019), because the jury returned a general verdict and, one of the potential predicate offenses, conspiracy to commit Hobbs Act

---

[2] Hereinafter cited as "[CV ECF No.]"

robbery, did not categorically qualify as a crime of violence under § 924(c)(3). Thus, Granda argued, it was possible that the jury could have found him guilty as to the § 924(c) and § 924(o) charges based solely on the Hobbs Act conspiracy charge using § 924(c)(3)'s residual clause, which had been invalidated by *Davis*. In its Order granting leave, the Eleventh Circuit stated:

> In short, Granda has made a *prima facie* showing that his claim satisfies the statutory criteria of § 2255(h)(2) on the basis that his § 924(c) and (o) convictions in Counts 6 and 7 may be unconstitutional under *Davis*, as he potentially was sentenced under the now-invalid residual clause of § 924(c)(3). *See In re Cannon*, 931 F.3d at 1243-45; 28 U.S.C. § 2255(h)(2).

(Case No. 20-cv-22763 ECF No. 1).

On September 10, 2020, the case was stayed pending the resolution of the then-pending appeal in Granda's co-defendant Carlos Granda's case. The Eleventh Circuit issued its opinion in Carlos Granda's case on March 11, 2021. *See Granda v. United States*, 990 F.3d 1272 (11th Cir. 2021). Subsequently, on May 29, 2021, Granda filed the instant Motion to Vacate. On June 8, 2021, after the District Court instructed the Government to show cause why the Motion should not be granted, the government tendered its Response. The case was then referred to this Court for a Report and Recommendation.

### III. Procedural Bar

Granda did not argue at trial or on direct appeal that his § 924(o) and § 924(c) convictions were invalid because the § 924(c)(3)(B) residual clause was unconstitutionally vague. "[A] defendant generally must advance an available challenge to a criminal conviction on direct appeal or else the defendant is barred from raising that claim in a habeas proceeding." *Granda*, 990 F.3d at 1286 (quoting *Fordham v. United States*, 706 F.3d 1345, 1349 (11th Cir. 2013)). Granda "therefore, procedurally defaulted this claim and cannot succeed on collateral review unless he can

5

either (1) show cause to excuse the default and actual prejudice from the claimed error, or (2) show that he is actually innocent of the § 924(o) and § 924(c) convictions." *Granda*, 990 F.3d at 1286.

Granda argues his claim is not procedurally defaulted because: (1) the error alleged is jurisdictional in nature; and (2) Granda can show actual prejudice because, unlike Carlos Granda, he is challenging a mandatory consecutive term of imprisonment which added seven years to his total sentence.

### A.   The Claimed Error is not Jurisdictional in Nature

"[A movant] can avoid the procedural-default bar altogether, meaning he can raise a claim for the first time on collateral review without demonstrating cause and prejudice, if the alleged error is jurisdictional." *See United States v. Bane*, 948 F.3d 1290, 1294 (11th Cir. 2020) (citing *United States v. Peter*, 310 F.3d 709, 711–13 (11th Cir. 2002)). Specifically, Granda claims that because one of the predicate offenses his § 924(o) and § 924(c) convictions were based upon, conspiracy to commit Hobbs Act robbery, is not a "crime of violence," his indictment contained allegations of conduct not covered under §§ 924(c) and (o). Thus, Granda concludes that the district court committed jurisdictional error in convicting and sentencing him for Counts 6 and 7. In support of his argument, Granda cites to a string of cases, all of which are inapposite and thus unpersuasive.

First, Granda cites to *Peter*, 310 F.3d at 713, 715, where the Eleventh Circuit found jurisdictional error because the indictment "alleged a specific course of conduct that [was] outside the reach of the mail fraud statute." *Id*. at 715. Granda fails to mention, however, that the *Peter* court specified that its holding applied to cases in which an indictment alleges *only* a non-offense. *Id*. at 714, 715. In other words, in *Peter*, the indictment consisted only of specific conduct that, as a matter of law, was outside the sweep of the charging statute. *Id*. at 711, 714. The Eleventh Circuit

6

made clear in *Peter* that the failure to allege a crime in violation of the laws of the United States is a jurisdictional defect. *United States v. Izurieta*, 710 F.3d 1176, 1179 (11th Cir. 2013) (citing *Peter*, 310 F.3d at 713–14; *United States v. McIntosh*, 704 F.3d 894, 901–03 (11th Cir.2013) (differentiating between jurisdictional and technical defects in indictments).

The same cannot be said for the indictment in this case. While Count 3, conspiracy to commit Hobbs Act robbery, is no longer a valid predicate for a conviction under §924 (c) and § 924 (o), Counts 1, 2, 4, and 5 are still valid predicates. *See Granda*, 990 F.3d 1272, 1284–85. Counts 6 and 7 clearly alleged a crime in violation of the laws of the United States.

Granda's reliance on *United States v. St. Hubert*, 909 F.3d 335 (11th Cir. 2018) fares no better. Like *Peter*, the error asserted in *St. Hubert* was that "'the indictment consisted only of specific conduct'—carrying, using, and brandishing a firearm during a Hobbs Act robbery and an attempted Hobbs Act robbery—that…was 'as a matter of law, ... outside the sweep of the charging statute.'" *Id*. at 343 (quoting *Peter*, 310 F.3d at 714). Indeed, in *St. Hubert*, the petitioner challenged his convictions under Counts 8 and 12 of the indictment, which charged him with carrying a firearm during the Hobbs Act robbery in Count 7 and using and carrying a firearm during the attempted Hobbs Act robbery in Count 11, respectively. *Id*. at 338–39. Because the petitioner there claimed that Hobbs Act robbery and attempted Hobbs Act robbery, which were the *sole* predicates on which his convictions were based, were not crimes of violence under § 924(c)(3)(A), the court properly found that his challenge was jurisdictional. *Id*. at 344.

Here, Granda does not, and cannot, claim that the indictment alleged *only* conduct that falls outside of the scope of §§ 924(c) and 924(o), as Granda's charges under Counts 6 and 7 could have also been properly predicated on Counts 1, 2, 4, or 5. In other words, unlike the petitioner in *St. Hubert*, Granda cannot claim that Counts 1-5 were all invalid predicates.

The district court in *Wainwright v. United States*, No. 19-62364-CIV-COHN, 2020 U.S. Dist. LEXIS 63247, at *40 (S.D. Fla. Apr. 6, 2020), did not specifically address why the challenge there was jurisdictional in nature. But because Wainwright, like St. Hubert, had alleged that none of the predicate offenses for his § 924(c) conviction were valid, the issue, at least as framed by Wainwright, was jurisdictional. That is not the case here. The *Wainwright* court cited to *Bane* which clarified that the court's jurisdiction is called into question only where the indictment charges conduct that is not a federal offense.

> The Supreme Court has instructed courts to use caution in labeling errors "jurisdictional." *See Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment*, 558 U.S. 67, 81, 130 S. Ct. 584, 175 L.Ed.2d 428 (2009). Jurisdiction refers to "the courts' statutory or constitutional power to adjudicate the case.*" United States v. Cotton*, 535 U.S. 625, 630, 122 S. Ct. 1781, 152 L.Ed.2d 860 (2002) (internal quotation marks omitted); *see also Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254, 130 S. Ct. 2869, 177 L.Ed.2d 535 (2010); *Union Pac.*, 558 U.S. at 81, 130 S. Ct. 584. Federal district courts have statutory power to adjudicate prosecutions of federal offenses. 18 U.S.C. § 3231. Because the prosecution must be for a federal offense, we have held that when an indictment affirmatively alleges conduct that is not a federal offense, it does "not invoke the district court's jurisdiction to enter judgment or accept a guilty plea." *United States v. Brown*, 752 F.3d 1344, 1352–53 (11th Cir. 2014); accord *Peter*, 310 F.3d at 713, 715.

*Bane*, 948 F.3d at 1295.

For the same reasons, Granda's reliance on *Adside v. United States*, No. 19-cv-24475 (S.D. Fla. Sept. 25, 2020), *Taylor v. United States*, No. 20-CV-22618-HUCK, 2020 U.S. Dist. LEXIS 151081 (S.D. Fla. Aug. 18, 2020), and *Wright v. United States*, No. 19-cv-24060 (Oct. 8, 2020) is misplaced. The movants were convicted of § 924(c) offenses based on valid predicates and, while acknowledging the valid predicates, argued that their convictions should be reversed because the jury *may* have based their conviction on an invalid predicate. As such, while *Adside*, *Taylor*, and *Wright* apparently assert that challenges arising under *Davis*, *Brown*, and *Stromberg* are always

jurisdictional in nature, to the extent that that proposition is inconsistent with the holdings in *Peter* and *St. Hubert*, they should be abrogated.

As Granda's challenge is not jurisdictional in nature, and he must either (1) show cause to excuse the default and actual prejudice from the claimed error, or (2) show that he is actually innocent of the § 924(o) and § 924(c) convictions.

### B.     Granda cannot Show Cause

As Granda concedes, this court is bound by the Eleventh Circuit's decision in *Granda*. There, the Eleventh Circuit determined that while prior to Carlos Granda's challenge few, if any, litigants had contended that the § 924(c) residual clause was unconstitutionally valid, because other litigants had challenged other portions of § 924(c) as vague, the tools existed for Carlos Granda to challenge § 924(c)'s residual clause as vague. *Granda*, 990 F.3d at 1288. The same is true here. For the reasons discussed in *Granda*, Granda cannot show that his claim is "so novel that its legal basis [was] not reasonably available to [Granda's] counsel." *Granda*, 990 F.3d at 1286 (quoting *Howard v. United States*, 374 F.3d 1068, 1072 (11th Cir. 2004)).

#### a.    The Court should Deny Request for COA

Granda, however, argues that he is entitled to a Certificate of Appealability ("COA") on the issue of whether relief is barred by procedural default. A prisoner seeking to appeal a district courts final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal; the prisoner must first obtain a COA. *See* 28 U.S.C. § 2253(c)(1).

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). "When a district court denies a habeas petition on procedural grounds and does not reach the petitioner's underlying constitutional claim, the petitioner must show that (1) 'jurists of reason would find it debatable whether the district court

9

was correct in its procedural ruling;' and (2) 'jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'" *Bell v. Fla. Atty. Gen.*, 614 F.3d 1230, 1231 (11th Cir. 2010) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "Thus, where a petition is denied on procedural grounds, determining whether a COA should issue 'has two components, one directed at the underlying constitutional claims and one directed at the district court's procedural holding.'" *Id*. (quoting *Slack*, 529 U.S. at 484–85).

First, Granda argues that the circuit courts are split as to whether under *Reed v. Ross*, 468 U.S. 1 (1984) there is a fourth instance in which novelty might constitute cause for procedurally defaulting a claim: when near-unanimous circuit precedent forecloses a claim. Granda argues that while some Circuits recognize this fourth instance, others, including the Eleventh Circuit, reject it and instead follow *Bousley v. United States*, 523 U.S. 614 (1998), which states that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." While there may be a circuit split on the issue, even if the Eleventh Circuit had determined that Granda could show cause if near-unanimous Eleventh Circuit precedent foreclosed his claim, Granda could not make this showing. Granda filed a direct appeal on September 14, 2007. Prior to that date, there were no cases in the Eleventh Circuit addressing, let alone foreclosing, the claim that § 924(c)'s residual clause was unconstitutionally vague. There were also no cases in the Eleventh Circuit foreclosing the claim that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii)—which is similar to that of § 924(c)—was unconstitutionally vague.[3] Thus, Eleventh Circuit precedent had not foreclosed Granda's claim prior to Granda's direct appeal.

---

[3] This is evidenced by the fact that *United States v. Devo*, 457 F. App'x 908 (11th Cir. 2012), which made that argument, was filed in the Eleventh Circuit some five years after Granda's direct appeal.

10

Second, Granda claims that the Eleventh Circuit in *Granda* disagreed with the Seventh and Tenth Circuits, which held that under *Reed*, the Supreme Court's decision in *Johnson* was a clear break from the past that provided cause to excuse procedural default. This is untrue. The *Granda* court made clear that it based its decision as to procedural default on Granda's *Davis* claim. In doing so, the Granda court stated the following:

> The third category -- when a Supreme Court decision disapproves of "a practice [the Supreme Court] arguably has sanctioned in prior cases" -- is more complicated. For this category, we analyze "whether others were recognizing and raising the same or similar claims in the period preceding or concurrent with the petitioner's failure to raise his claim." Importantly, however, "[e]ven if others have not been raising a claim, the claim may still be unnovel if a review of the historical roots and development of the general issue involved indicate that petitioners did not 'lack the tools to construct their constitutional claim.' " Granda's ***Davis*** claim fits most neatly into this third category. (**Unlike the Johnson ACCA decision**, Davis did not overrule any prior Supreme Court precedents holding that the § 924(c) residual clause was not unconstitutionally vague.).

*Granda*, 990 F.3d at 1286–87 (emphasis added) (internal citations omitted). From this, it is clear that, contrary to Granda's assertions, the *Granda* court, in fact, found that *Johnson* overruled prior Supreme Court precedent, albeit via dicta.

As neither of Granda's arguments has merit, the court need not grant a COA as to whether relief is barred by procedural default. Jurists of reason would not find it debatable whether Granda is procedurally barred for want of cause. Nor would jurists of reason find it debatable whether Granda's petition states a valid claim of the denial of a constitutional right, because, as further detailed below, even if Granda could overcome the procedural bar, it appears he cannot succeed on the merits.

### C. Granda cannot Show Prejudice

Having found that Granda cannot show cause for failing to raise this issue at trial or on appeal, the court need not address whether Granda can show actual prejudice. Assuming *arguendo*,

though, that Granda were able to show cause, his claim would still fail, as he cannot show prejudice. Granda correctly points out that the *Granda* court did not and could not address whether a petitioner receiving a longer sentence than he would have due to his § 924(c) conviction constitutes prejudice. In this case, it does not.

Granda cites to *Cross v. United States*, 892 F.3d 288 (7th Cir. 2018) for the proposition that "[t]here is 'no doubt that an extended prison term…constitutes prejudice' that excuses procedural default." In *Cross*, the petitioners were classified as "career offenders" under the residual clause of the Mandatory Sentencing Guidelines (the "Guidelines"). *Id*. at 291. Under the Guidelines, a defendant qualified as a career offender after his third felony conviction for either a "crime of violence" or a drug offense. *Id*. at 291–92. The Guidelines defined "crime of violence" in three ways, one of which being through its residual clause. *Id* at 292. After the residual clause in the ACCA, which was identical to that of the Guidelines, was struck down by *Johnson v. United States*, 576 U.S. 591 (2015), the petitioners in *Cross* challenged their enhanced sentences, which were given as a result of their status as career offenders. In pertinent part, the petitioners claimed the right to be resentenced on the ground that the vague, yet mandatory, residual clause unconstitutionally fixed their terms of imprisonment. *Id*. at 294. In other words, the petitioners argued that because at least one of the three *requisite* crimes that qualified them as career offenders and mandated their enhanced sentences was based on the vague definition of "crime of violence," their enhanced sentences should be reconsidered. Thus, when examining prejudice, the Seventh Circuit stated, "[w]e have no doubt that an extended prison term—which was imposed on both men ***as a result of their designation as career offenders***—constitutes prejudice." *Id*. at 295 (emphasis added).

*Cross* is not analogous. Here, unlike in *Cross*, Granda's conviction and enhanced sentence under Count 7 did not have to be predicated on all five or even multiple of the then-valid predicate offenses. Put another way, where the Guidelines in *Cross* required *three* valid predicate convictions to mandate an enhanced sentence, here, Granda needed to be charged with just *one* valid predicate offense to mandate his conviction and enhanced sentence. He was charged with and convicted of at least four. Thus, Granda faces the same hurdle Carlos Granda faced: Granda must show a substantial likelihood that the jury actually relied only on Count 3 as the predicate offense for his conviction in Count 7. *Granda*, 990 F.3d at 1288. This he cannot do.

The jury unanimously found Granda guilty of conspiracy and attempt to possess cocaine with the intent to distribute, attempted carjacking, conspiracy to commit Hobbs Act robbery, and attempt to commit Hobbs Act robbery. As stated in *Granda*, "[t]he trial record makes it abundantly clear that all of these findings rested on the same operative facts and the same set of events -- the jury found beyond a reasonable doubt that Granda had conspired and attempted to rob the truck in order to possess and distribute the cocaine it held." *Id*. at 1289. The evidence supporting Granda's alleged possession of and conspiracy to possess a firearm in furtherance of these crimes includes (1) his initial conversation with the CI and undercover detective detailing how he and his crew would rob the truck at gunpoint, (2) his conversation with the CI where he made a gesture with his hand in the shape of a gun indicating how he planned to duck bullets and shoot the truck drivers from above, and (3) his presence in the car from which police recovered a loaded semiautomatic pistol. Granda also orchestrated the entire scheme, instructed several co-conspirators, including Carlos Granda, to bring guns to the robbery, and attended a meeting at which the co-conspirators packed guns for the robbery and discussed the execution of the crime.

It is as clear here as it was in *Granda* that "[t]he objective of the robbery and the carjacking was the same: to obtain and sell the multi-kilogram quantity of cocaine that was to be taken by force from the truck." *Id*. So the jury could not have concluded that Granda conspired to possess a firearm and did possess a firearm "in furtherance of his robbery conspiracy without also finding at the same time that he conspired to possess [and did possess] the firearm in furtherance of his conspiracy and attempt to obtain and distribute the cocaine, his attempt at carjacking, and the attempt at the robbery itself." *Id*. Further, Granda "points to nothing in the trial record that would suggest the jurors distinguished between these alternative predicate crimes." *See Foster*, 996 F.3d at 1108. To quote the court in *Foster*

> [Granda]'s position is even weaker than [Carlos] Granda's, who asserted -- unsuccessfully -- that his acquittal on a § 924(c) charge was an indication that the jury predicated his § 924(o) conviction on the Hobbs Act conspiracy predicate rather than on…the…alternative predicates. [Granda], by contrast, was convicted of both § 924(o) and § 924(c) charges; he has no credible basis to argue that it is more likely that the jury predicated these convictions on a robbery conspiracy offense than on the [] drug trafficking offenses, and, in any case, we rejected this argument in *Granda*.

*Id*. at 1108–09 (citing *Parker v. United States*, 993 F.3d 1257, 1263 (11th Cir. 2021) (internal citations omitted).

Thus, this Court concludes that the crimes here are so inextricably intertwined that no rational juror could have found that Granda carried a firearm in relation to one predicate but not the other. *See Id*. at 1290. Indeed, "[t]he tightly bound factual relationship of the predicate offenses precludes Granda from showing a substantial likelihood that the jury relied solely on Count 3 to predicate its conviction" on Count 7. *Id*. at 1291.

## IV.    Granda cannot Succeed on the Merits

Even if Granda's claim is jurisdictional and the Court were to proceed to the merits of his claim, Granda's claim cannot succeed. Like his co-defendant, Granda argues that under *Stromberg*

*v. California*, 283 U.S. 359 (1931) and *Parker v. Sec'y for Dep't of Corrs.*, 331 F.3d 764 (11th Cir. 2003), the general verdict here must be set aside because there was no way to know whether the jury relied on the invalid predicate of conspiracy to commit Hobbs Act robbery to convict Granda under Counts 6 and 7. As discussed in *Granda*, this argument is a losing one. After the Eleventh Circuit decided *Parker*, the Supreme Court held in *Hedgpeth v. Pulido* that *Stromberg* error is subject to the *Brecht*[4] harmless error standard. *Granda*, 990 F.3d at 1294 (citing *Hedgpeth*, 555 U.S. 57, 58, 62 (2008)).

Under the *Brecht* harmless error standard, reversal is warranted only when the petitioner suffered "actual prejudice" from the error. *Brecht*, 507 U.S. at 637. In other words, "the harmless error standard mandates that 'relief is proper only if the ... court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict. There must be more than a reasonable possibility that the error was harmful.'" *Foster*, 996 F.3d at 1107 (citing *Davis v. Ayala*, 576 U.S. 257, 267–68 (2015)). "Thus, it is proper to look at the record to determine whether the invalid predicate actually prejudiced the petitioner -- that is, actually led to his conviction - - or whether the jury instead (or also) found the defendant guilty under a valid theory." *Granda*, 990 F.3d at 1294.

As this Court determined, it is undeniable that Granda's valid predicates are inextricably intertwined with the invalid Hobbs Act conspiracy predicate. Thus, "[t]here can be no grave doubt that the inclusion of the invalid predicate did not have a substantial influence in determining the jury's verdict in this case." *See Foster*, 996 F.3d at 1108 (citing to *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). Granda's argument here is unsuccessful.

---

[4] *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

Granda next claims that *In re Gomez*, 830 F.3d 1225 (11th Cir. 2016) supports his argument that Count 3 was the operative predicate. As discussed in *Granda*, *Gomez* does not help Granda. While in *Gomez* the court held that Gomez had made a prima facie showing sufficient to receive authorization to file a second or successive § 2255 motion alleging that his § 924(c) conviction rested on an invalid predicate "[s]ince the jury may have found that Gomez only 'possessed' a firearm during his Hobbs Act conspiracy offense," the court in *Granda* clarified that "this prima facie decision is not inconsistent with a holding that, on the merits, the harmless error inquiry requires an examination of whether alternative, valid predicates grounded Granda's conviction." *Granda*, 990 F.3d at 1296. The *Granda* court therefore concluded that *Gomez* left open the possibility for a district court to apply *Brecht* on the merits. *Id*.

Granda's argument that *Alleyne v. United States*, 570 U.S. 99 (2013), prohibits the court from looking to the record to determine what predicate the jury relied upon for his Count 6 and 7 convictions fares no better and was also rejected in *Granda*. *See Id*. at 1295. As the court stated there, while *Alleyne* prohibits judicial factfinding, "a judge conducting a *Brecht* harmless error analysis does not find a fact at all; instead, the judge asks as a matter of law whether there is grave doubt about whether an instruction on an invalid predicate substantially influenced what the jury already found beyond a reasonable doubt." *Id*.

Finally, Granda argues that the court should apply the "least-culpable-offense" approach as outlined in *Shepard v. United States*, 544 U.S. 13 (2005). Relying on this approach, Granda concludes that because the indictment, the jury instructions, and the verdict here, do not specify which predicate the jury used to support his Count 6 and 7 convictions, the court must assume that the jury used the least culpable offense, conspiracy to commit Hobbs Act robbery. This argument fails for several reasons.

16

First, *Shepard* applies only to "divergent decisions in the Courts of Appeals applying [*Taylor v. United States*, 495 U.S. 575] when prior convictions stem from guilty pleas, not jury verdicts." *Shepard*, 544 U.S. at 19. As this case involved a jury trial conviction and not a guilty plea, *Shepard* is inapposite. Second, *Taylor* and *Shepard* apply to a very narrow subset of cases. *Taylor* and *Shepard* involve the ACCA's mandate of a minimum 15-year prison sentence for anyone possessing a firearm after three prior convictions for serious drug offenses or violent felonies. *See Shepard*, 544 U.S. at 15–16. Under the ACCA, burglary was only considered a violent felony if it was committed in a building or enclosed space; but some state statutes had broader or multiple definitions of "burglary." The court in *Taylor* found that "a [later] court sentencing under the ACCA could look to statutory elements, charging documents, and jury instructions" to determine whether a burglary offense a defendant had been convicted of qualified as a violent felony. *Id*.

This case does not involve the ACCA. In fact, Hobbs Act robbery is a federal offense, which is defined only under 18 U.S.C. §1951 and was classified by § 924(c) as a crime of violence. Thus, these cases are inapplicable here. Simply put, this argument fails.

V.   Recommendations

Based on the foregoing, it is recommended that the Motion to Vacate be **DENIED**, and that no certificate of appealability be issued.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1 (2016); *see also* 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-*

*Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**SIGNED** this 1st day of September, 2021.

                                                LISETTE M. REID
                                                UNITED STATES MAGISTRATE JUDGE

cc:    **U.S. District Judge Donald Middlebrooks**; and
       **All Counsel of Record via CM/ECF**